ROBERT J. ROSATI, SBN: 112006
robert@erisalg.com
RAQUEL M. BUSANI, SBN: 323162
raquel@erisalg.com
6485 N. Palm Avenue, Suite 105
Fresno, California 93704
Telephone: 559-478-4119
Telefax: 559-478-5939

Attorneys for Plaintiff,
TAMMY BASHOR

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| TAMMY BASHOR,<br><br>            Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>            Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>**FOR DECLARATORY RELIEF FOR LONG TERM DISABILITY BENEFITS UNDER 29 U.S.C. SECTION 1132(a)(1)** |

Plaintiff, Tammy Bashor ("Bashor" or "Plaintiff") alleges as follows:

## JURISDICTION

1.      Plaintiff's claims for relief arise under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1). Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America. 29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2.      Venue is proper in the Eastern District of California because Plaintiff was and is a resident of the City of Modesto, in the County of Stanislaus, California, when Defendant denied her long term disability benefits and denied her appeal of that decision. Therefore, 29 U.S.C.

section 1132(e)(2) provides for venue in this Court. Intradistrict venue is proper in this Court's Fresno Division.

**PARTIES**

3. Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Sutter Health Long Term Disability Plan ("The Plan") and thereby entitled to receive benefits therefrom. Plaintiff was a beneficiary because she was an employee of Sutter Health which established The Plan for the benefit of its members.

4. The Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

5. Defendant Metropolitan Life Insurance Company, ("MetLife"), issued Group Policy No. 116600-1-G ("The Policy") to Bashor's employer, under which benefits are provided by The Plan, is the insurer and decision maker for The Plan, acted in a fiduciary capacity when it denied Bashor's benefits and denied her appeal, and took the actions at issue in this action, and is legally liable for providing the LTD benefits sought and for the other conduct at issue herein.

6. The Policy was delivered in the State of California and is governed by the laws thereof.

**FIRST CLAIM FOR RELIEF**

7. The Policy provides long term disability ("LTD") benefits, which benefits potentially could continue for five (5) years.

8. The Policy provides in part, the following:

    A. "Disability or Disabled means that as a result of Sickness or injury You are either Totally Disabled or Partially Disabled.

    B. Totally Disabled or Total Disability means:
During the Elimination Period and the next 24 months, You are
unable to perform with reasonable continuity the Substantial and
Material Acts necessary to pursue Your Usual Occupation in the
usual and customary way.

After such period, You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your:

* age;
* education;
* training;
* experience;
* station in life; and
* physical and mental capacity

that exists within any of the following locations:

* a reasonable distance or travel time from Your residence in light of the commuting practices of Your community;

* a distance of travel time equivalent to the distance or travel time You traveled to work before becoming disabled; or

* the regional labor market, if You reside or resided prior to becoming disabled in a metropolitan area."

C. "Substantial and Material Acts means the important tasks, functions and operations generally required by employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified. In determining what substantial and material acts are necessary to pursue Your Usual Occupation, We will first look at the specific duties required by Your job. If You are unable to perform one or more of these duties with reasonable continuity, We will then determine whether those duties are customarily required of other employees engaged in Your Usual Occupation. If any specific, material duties required of You by Your job differ

from the material duties customarily required of other employees engaged in Your Usual Occupation, then We will not consider those duties in determining what substantial and material acts are necessary to pursue Your Usual Occupation."

D.   "Usual Occupation means any employment, business, trade or profession and the Substantial and Material Acts of the occupation You were regularly performing for the employer when the Disability began. Usual Occupation is not necessarily limited to the specific job that You performed for the employer."

9. Bashor was formerly employed by Sutter Health as a case manager. Bashor was responsible for care coordination and care transitions planning throughout the acute care patient experience. She was required to work in collaboration with the physician, utilization manager, medical social worker and bedside registered nurse to assure the timely progression and transition of patients to the appropriate level of care to prevent unnecessary admissions or readmissions. The position requires that she be a licensed registered nurse.

10. Bashor's last day of work was June 8, 2021; her date of disability as determined by MetLife is June 9, 2021. Bashor's claim for benefits was received by MetLife on November 8, 2021.

11. Bashor suffers from and is disabled due by the combined effects of ventricular tachycardia, non-ischemic cardiomyopathy, hypertension, cognitive impairment (weaknesses in executive functioning and verbal memory), intermittent numbness, white matter intensities noted on brain MRI, migraines, stuttering, sleep apnea, musculoskeletal impairment (low back pain), visual and speech disturbance, history of cervical cancer, urinary incontinence, anxiety, and depression.

12. Bashor was evaluated by Gayle Deutsch, Ph.D., on December 3, 2021.

13. On January 19, 2022, a MetLife representative conducted an initial interview with Bashor.

14. On March 15, 2022, MetLife's Martina Le completed a medical summary noting that: Bashor went out of work due to speech and cognitive dysfunction, ventricular tachycardia, sciatica, and sleep apnea; her primary care physician, Dr. James Shiovitz noted in a medical record

on June 10, 2021, that Bashor is extremely stressed and upset, unable to cope physically and cognitively with work situations.

15. On March 24, 2022, Bashor was examined and evaluated by Carol A. Johnson – Schroetlin, Psy.D.

16. Bashor was examined by Dr. Satisch K. Sharma on April 18, 2022.

17. MetLife inquired of Bashor concerning the status of her claims for California State Disability Insurance and federal Social Security Disability Insurance, Bashor:

    A. Provided information that she was awarded California State Disability Insurance; and

    B. On June 15, 2022, Bashor notified MetLife that she had been awarded Social Security Disability Insurance and provided the face page of the notice dated June 12, 2022, to that effect. The notice indicates that the Social Security Administration found that Bashor became "disabled under our rules on June 9, 2021," and that she was entitled to begin to receive benefits on December, 2021.

18. MetLife obtained a "Physician Consultant Review" dated May 26. 2022, by Maria Mainolfi, MD, Board Certified Occupational Medicine.

19. MetLife's vocational rehabilitation counselor, Laura Hernandez, provided a vocational evaluation on June 23, 2022.

20. MetLife's evaluation of Bashor's capacity to perform her usual occupation only considered the physical demands of her job: sitting, standing, walking, lifting, balancing and stooping and whether her workstation was close to a bathroom. At no time did MetLife evaluate whether Bashor could perform with reasonable continuity the "Substantial and Material Acts" of her Usual Occupation in the usual and customary way. MetLife only evaluated whether Bashor could perform a "sedentary physical demand level" occupation while sitting; but Bashor was paid to and required to meet the standards of a Registered Nurse, which she also could not and can no longer do with reasonable continuity in the usual and customary way.

21. By letter dated June 24, 2022, MetLife denied Bashor's claim for LTD benefits.

22. By letter dated July 25, 2022, Dr. Raman Moradkhan, MD, FACP, FACC, FHRS,

wrote that Bashor "has cardiac condition including non-ischemic cardiomyopathy with frequent multi-focal PVCs which are under treatment and control. However, her condition, especially frequent PVCs exacerbate significantly with stressful conditions which subsequently worsens her cardiac function. The patient needs to avoid any situation which increases her stress level."

23. By letter dated July 1, 2022, James L. Shiovitz, MD, wrote that:

> "[Bashor] has been followed in this medical practice for the last 28-years. Over the last three years, she has undergone significant physical and cognitive changes that preclude her ability to perform her functions as a registered nurse."

24. By letter dated August 22, 2022, Bashor appealed the denial of her LTD benefits

25. On September 6, 2022, MetLife interviewed Bashor again. Bashor was tearful and said she still could not function properly.

26. MetLife obtained a review of Bashor's records by Gabrial Jasso, Ph.D., dated September 12, 2022, who opined there were no restrictions or limitations on Bashor's capacity to work

27. MetLife obtained a review of Bashor's records by Dr. Roger Belcourt dated September 13, 2022. He opined Bashor's "abilities are sustainable on a full-time basis (8 hours per day 40 hours per week) with restrictions" and "Close bathroom access."

28. Bashor received a "progress letter" from MetLife. Bashor responded, by letter dated September 25, 2022, that she had concerns with MetLife's process. Bashor explained that it appeared MetLife had also not obtained records from several of her doctors.

29. By email dated January 14, 2023, Jesse Bashor, Tammy Bashor's husband wrote that:

    A.    Bashor had been approved for Social Security;

    B.    Bashor's electro physicist told her that she is high risk for sudden cardiac death;

    C.    Bashor has an aneurysm in her brain;

    D.    Her primary care physician told Bashor she could not continue to work as an RN; and

      E.     Bashor's cardiologist stated that she needs to avoid any situation that increases her stress level.

30.    MetLife obtained an Addendum from Dr. Jasso dated February 2, 2023.

31.    MetLife obtained an Addendum from Dr. Belcourt dated February 3, 2023. Dr. Belcourt opined, regarding the right A1, A2, junction aneurysm, "this is limiting as any increase in stressful activities could lead to ruptured brain aneurysm; thus the claimant should indeed limit stress, she would have to again limit any physically demanding/stressful activities such as heavy lifting. . ."

32.    By letter dated February 23, 2023, MetLife denied Bashor's appeal of the denial of her claim for LTD benefits. The letter states, in part, "This review constitutes MetLife's final determination on appeal in accordance with the Plan and federal law."

33.    Review of this claim is *de novo* because discretionary clauses are banned in California by California Insurance Code §11010.6. The Summary Plan Description attached to the Certificate of Insurance states that MetLife has discretion to decide claims. That purported reservation of discretion is null and void, in violation of California law.

34.    Bashor performed all conditions precedent required to be performed by her under the terms of The Policy, including but not limited to:

      a.     She is and was eligible for benefits.

      b.     She was disabled throughout the Elimination Period.

      c.     She submitted "proof" as required by The Policy in a timely fashion.

      d.     She applied for applicable "Other Income" benefits.

35.    ERISA section 503, 29 U.S.C. section 1133 provides:

"In accordance with regulations of the Secretary, every employee benefit plan shall–

> (1)    provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and
>
> (2)    afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the

appropriate named fiduciary of the decision denying the claim."

36. Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C. §1133 and its implementing Regulations. Specifically:

A. 29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendant herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B. The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133. These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

    i. Such procedures comply with the specifications of the Regulations.

    ii. The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

    iii. Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review

procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

  iv.  The Regulations further provide: "In the case of a plan providing disability benefits, the plan must ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. Accordingly, decisions regarding hiring, compensation, termination, promotion, or other similar matters with respect to any individual (such as a claims adjudicator or medical or vocational expert) must not be made based upon the likelihood that the individual will support the denial of benefits."

  v.  Defendant is required to provide a full and fair review of any adverse determination which includes:

  a.  That a claimant shall be provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits.

  b.  A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the

administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

      c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

      d.      The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

      e.      The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

      f.      The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

      g.      The Regulations further provide that before a plan can issue an adverse benefit determination on review of a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any

new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination in connection with the claim as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the claimant a reasonable opportunity to respond prior to that date.

      h.    The Regulations further require that such adverse decision include discussion of the decision, including an explanation of the basis for disagreeing with or not following:

      \*    The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

      \*    The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

      \*    A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration.

      i.    The Regulations further provide that before a plan can issue an adverse benefit determination on review on a disability benefit claim on a new or additional rationale, the plan administration shall provide the claimant with the rationale and provide the claimant a reasonable opportunity to respond to that rationale.

37.    MetLife denied Bashor a full and fair review of her claim for benefits.

    A.    Bashor is informed and believes that MetLife does not have claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan

COMPLAINT
-11-

documents and that, where appropriate, the plan provisions had been applied consistently with respect to similarly situated claimants because when denying Bashor's LTD benefits and denying her appeal of that denial, MetLife did not apply the terms set forth in The Policy.

B.  MetLife's denial of Plaintiff's LTD benefits was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence, and a violation of the terms of The Policy. Defendant did not provide Bashor a full and fair review of her claim for benefits and violated applicable claims Regulations: (1) it does not have appropriate claims standards; and (2) it relied upon new rationale not provided to Bashor in advance of its final decision on review.

C.  The evidence demonstrates that Bashor is, and all relevant times has been, disabled under the terms of The Policy and therefore entitled to continued LTD benefits from MetLife because the evidence demonstrates that Bashor is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue her Usual Occupation in the usual and customary way:

    i.  MetLife's Physician Consultant, Dr. Mainolfi, specified that Bashor has physical restrictions and limitations, which MetLife summarized in its June 24, 2022, benefits denial letter.

    ii.  MetLife's Physician Consultant, Dr. Belcourt, agreed that Bashor has physical restrictions and limitations, which MetLife summarized in its February 23, 2023, appeal denial letter.

    iii.  Therefore, MetLife's medical reviews demonstrate that Bashor cannot perform the physical requirements of her Usual Occupation "in the usual and customary way" because the plain meaning of "usual and customary way" is performing occupational duties without accommodation or modification.

38. Bashor has exhausted all internal remedies required by the terms of The Policy and by the terms of ERISA.

39. An actual controversy has arisen and now exists between Plaintiff and Defendant

with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

40. Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant is obligated to pay her LTD benefits under The Policy, retroactive to the first day her benefits were denied, for as long as she is entitled to receive LTD benefits under the terms of The Policy.

41. A judicial determination of these issues is necessary and appropriate this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

42. As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

(For Declaratory Relief)

43. Plaintiff incorporates by reference paragraphs 1 through 43, inclusive, of this Complaint.

44. 29 U.S.C. §1132(a)(1)(B) authorizes a participant or beneficiary of an ERISA plan, such as Bashor, to bring a civil action to clarify her rights to future benefits under the terms of the Plan.  Bashor seeks a declaratory judgment construing ambiguous terms in The Policy which terms must be applied when evaluating Bashor's right to benefits after she receives 24 months of benefits.

45. Bashor is potentially entitled to LTD benefits from MetLife for five (5) years.

46. The Policy's definition of "totally disabled" or "total disability" for benefits after the Elimination Period and the next 24 months is ambiguous because the phrase "station in life" is ambiguous.

A. The term "station in life" is not clear and well-fixed such that an ordinary reader of

The Policy would recognize what it means in context or what it means at all. The Policy contains no definition or explanation of "station in life" and provides no illustration as to how that term is to be applied.

B.   Reasonably construed in favor of Bashor "station in life" means that alternative occupations must pay at least 80% of the insured's indexed pre-disability earnings and require comparable professional skills and work responsibilities to those of the insured's usual occupation.

47.  The Policy provides that if the insured is disabled "due to a mental or nervous disorder or disease" or "due to neuromuscular or to soft tissue, unless a disability has objective evidence of certain factors or due to chronic fatigue syndrome and related conditions, disability benefits are limited to a life time benefit of 24 months or the lifetime maximum benefit period. These terms are ambiguous because the term "due to" is ambiguous and the application of the limitations are ambiguous in context, as described herein.

48.  The term "due to" is not susceptible to easy interpretation. The causal nexus of "due to" has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other end.

49.  The Policy is ambiguous as to the application of the mental or nervous disorder or disease limitation and the neuromuscular, musculoskeletal or soft-tissue disorder and chronic fatigue syndrome and related conditions limitations when the individual is disabled due to one or more limited disability benefits conditions and one or more non-limited benefits disabilities conditions.

A.   One possible interpretation is that under the circumstances MetLife should consider only non-limited disability benefit disabilities after the insured has received 24 months of disability benefits.

B.   However, the definition of "totally disabled" applicable after the insured has received 24-months of disability benefits states, "You are not able to engage with reasonable continuity in any occupation in which you can reasonably be expected to perform satisfactorily in

light of your: age; education; training; experience; station in life; and physical and mental capacity."

    C.    Therefore, if MetLife considers only non-limited disability benefit disabilities after the insured has received 24 months of benefits, that would mean that it would be evaluating the insured's physical and mental capacity without reference to limited disability benefit disabilities.

50. Under The Policy evaluating an insured's "physical and mental capacity" under the totally disabled definition after the elimination period and the insured has received 24 months of benefits requires consideration of the insured's "physical and mental capacity" and makes no provision for evaluating that capacity without reference to limited disability benefit disabilities.

51. MetLife could have defined the terms of The Policy by, for example, qualifying "physical and mental capacity" in the definition of totally disabled after the elimination period and the next 24-months by adding, for example, "subject to limited disability benefit considerations." Alternatively, MetLife could have included in the limited disability benefit provisions an explanation that, for example, "If you are disabled due to a limited disability benefit disability and a non-limited disability benefit disability, we will evaluate your physical and mental capacity to perform any occupation with reference only to non-limited disability benefit disabilities." The Policy does not do so. The Policy as to consideration of limited disability benefit disabilities after the elimination period and the next 24 months, is thus ambiguous.

52. Reasonably construed in favor of Bashor, The Policy means that after the elimination period and the next 24 months, the evaluation of whether Bashor is able to engage with reasonable continuity in any occupation in which she could reasonably be expected to perform satisfactorily in light of her age, education, training, experience, station in life, and physical and mental capacity, must take into account both non-limited disability benefit disabilities, and also limited disability benefit disabilities, such as disabilities due to mental or nervous disorders or diseases, and disabilities due to neuromuscular, musculoskeletal or soft-tissue disorders and chronic fatigue syndrome and related conditions.

WHEREFORE, Plaintiff prays judgment as follows:

1. For declaratory judgment against MetLife ordering it to pay to Bashor LTD benefits from December 7, 2021, and continuing until and unless she is determined to no longer be entitled to such benefits under The Policy.

2. Bashor is entitled to a monthly benefit of $5,000.00, minus "Other Income" she receives. That monthly benefit is owed after the 180 day Elimination Period set forth in The Policy.

    A. Bashor's Elimination Period was from June 9, 2021, to December 6, 2021.

    B. Bashor received offsetting "Other Income" benefits for the months of December` 2021, through June 2022 from both California SDI and federal SSDI. Therefore, for the months from December 7, 2021, through June 6, 2022, Bashor is entitled only to the minimum monthly benefit of $100.00, per month, or $600.00.

    C. For the months from June 7, 2022, ongoing, Bashor's monthly benefit is offset only by her receipt of federal SSDI benefits in the amount of $2,814.00, per month. Therefore, for the months from June 7, 2022, Bashor's net monthly benefit owed by MetLife is $2,186.00, for each month she is entitled to benefits from MetLife.

3. For prejudgment interest on unpaid benefits.

4. For attorney's fees incurred in this action.

5. For costs of suit incurred herein.

6. For such other and further relief as the Court deems just and proper.

7. For declaratory judgment pursuant to 29 U.S.C. §1132(a)(1), as requested in Paragraphs 46 and 52 of this Complaint.

Dated: July 31, 2023

                           */s/ Robert J. Rosati*
                           ROBERT J. ROSATI,
                           Attorney for Plaintiff,
                           Tammy Bashor